IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION

| | | |
|---|---|---|
| ALEX DONOVAN LAWSON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CIVIL ACT. NO. 3:21-cv-247-ECM |
| | ) | (WO) |
| PARKWOOD INDUSTRIES LLC, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION and ORDER**

Now pending before the Court is the Defendant Parkwood Industries, LLC's ("Parkwood") motion for partial summary judgment (doc. 79).  Plaintiff Alex Donovan Lawson ("Lawson") has brought claims against Parkwood for negligence; wantonness; negligent/wanton hiring, training, supervision, and retention; negligent/wanton entrustment; and negligent/wanton maintenance, operation, service and/or repair. Parkwood has moved for summary judgment on the negligent/wanton hiring, training, supervision, and retention claims and the negligent/wanton entrustment claims.  Upon consideration of the briefs, evidence, and applicable law, and for the reasons that follow, the Defendant's motion for summary judgment is due to be GRANTED.[1]

---

[1] Parkwood has also moved to exclude the testimony of Plaintiff's experts Ona Graham and Rustin T. Yerkes. (Docs. 81–82).  The Court has not considered the testimony of either expert in ruling on summary judgment.

## I.  JURISDICTION

The Court has original subject matter jurisdiction of this matter pursuant to 28 U.S.C. § 1332.  Personal jurisdiction and venue are uncontested, and the Court concludes that venue properly lies in the Middle District of Alabama.  *See* 28 U.S.C. § 1391.

## II.    LEGAL STANDARD

"Summary judgment is proper if the evidence shows 'that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" *Hornsby-Culpepper v. Ware*, 906 F.3d 1302, 1311 (11th Cir. 2018) (quoting Fed. R. Civ. P. 56(a)).  "[A] court generally must view all evidence and make all reasonable inferences in favor of the party opposing summary judgment." *Fla. Int'l Univ. Bd. of Trs. v. Fla. Nat'l Univ., Inc.*, 830 F.3d 1242, 1252 (11th Cir. 2016).  However, "conclusory allegations without specific supporting facts have no probative value." *Jefferson v. Sewon Am., Inc.*, 891 F.3d 911, 924–25 (11th Cir. 2018).  If the record, taken as a whole, "could not lead a rational trier of fact to find for the non-moving party," then there is no genuine dispute as to any material fact. *Hornsby-Culpepper*, 906 F.3d at 1311 (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).

The movant bears the initial burden of demonstrating that there is no genuine dispute as to any material fact, and the movant must identify the portions of the record which support this proposition. *Id.* (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). The movant may carry this burden "by demonstrating that the nonmoving party has failed to present sufficient evidence to support an essential element of the case." *Id.*  The burden

then shifts to the non-moving party to establish, by going beyond the pleadings, that a genuine issue of material fact exists. *Id.* at 1311–12.

The Court construes the facts in the light most favorable to the non-movant plaintiff and draws all reasonable inferences in his favor. *Stewart v. Booker T. Washington Ins.*, 232 F.3d 844, 848 (11th Cir. 2000) ("In assessing whether there is any 'genuine issue' for trial, the court 'must view all the evidence and all factual inferences reasonably drawn from the evidence in the light most favorable to the nonmoving party' and 'resolve all reasonable doubts about the facts in favor of the non-movant.' Moreover, the court must avoid weighing conflicting evidence or making credibility determinations." (citations omitted)).

## III.    FACTS

This case derives from a traffic accident that occurred on April 22, 2020. Gerald B. Pitts ("Pitts"), who was driving an eighteen-wheeler, struck Lawson's vehicle while Lawson was stopped at a stoplight on U.S. Highway 280 in Phenix City, Alabama. Parkwood does not dispute that Pitts was its employee and acting within the scope of his employment at the time of the accident. While Pitts was originally named a Defendant in this case, Pitts died on July 28, 2022 and was terminated from this lawsuit on December 1, 2022. (Doc. 78).

Pitts attended truck driving school in 2009 and received his truck driving certification. Pitts successfully completed a written and driving exam as part of this process. Pitts then started his first job driving an eighteen-wheeler with Swift Transportation ("Swift") in 2010. Pitts worked for Swift for about one year before he was terminated for receiving three citations from the company.

Pitts received his first citation after he tore off the caging around a fuel pump, which violated company policy.  As a result, Swift had to replace the removed caging.  Pitts received a second citation after he pulled the bumper off of another truck at a Pilot station. That incident occurred when Pitts' back bumper caught the other truck's front bumper as Pitts drove past it.  Pitts received his third citation after he pulled to the side of the road due to rainy conditions.  As Pitts slept in his sleeper cabin, his truck fell into a ditch.  Swift terminated Pitts after this final incident.  Swift explained that, because Pitts received three citations, he was no longer qualified to drive for Swift.

For about the next three months, Pitts drove for a man named Sasha, who ran a one-truck operation.  Although Sasha's truck was not in good condition, Pitts drove for Sasha because Pitts was "desperate for money." (Doc. 80-1 at 8).  Pitts stopped working for Sasha after Sasha's truck broke down.  Pitts did not have any driving incidents while working for Sasha.

For about the next six months, Pitts drove what he described as a "raggedy" truck for Grace and Mercy Trucking ("GMT").  Pitts accumulated citations on his license for failed inspections while driving for GMT.  The record does not establish how many citations Pitts received while driving for GMT or why those citations were issued.  Pitts stopped working for GMT after GMT's truck broke down.

Thereafter, Pitts was unemployed for about six months.  Pitts applied to about nine different trucking companies during this period of unemployment.  However, Pitts was unable to secure employment because of the citations he received while driving for GMT. In 2013, Pitts started driving an eighteen-wheeler for KAK Trucking ("KAK").  Pitts drove

for KAK for about a year but stopped driving for the company after having a compensation dispute with the owner.  Pitts did not have any driving incidents during his time at KAK.

Pitts was once again unemployed for about six months after leaving KAK.  During this period, Pitts re-applied with the same nine trucking companies to which he previously applied.  Those companies informed Pitts that, under their rules, Pitts was unemployable due to his driving record and previous citations.  After this period of unemployment, Pitts returned to GMT for about four months in 2015. Once again, Pitts stopped working for GMT after their truck broke down.  Pitts was then unemployed for another six months. Pitts re-applied to about nine trucking companies and was again told that he was unemployable under those companies' rules due to his driving record.

Pitts next drove for a temporary employment agency that connected truck drivers with trucking companies.  Pitts drove for this agency for a few months and did not have any driving incidents in this time period.  Pitts was then unemployed for approximately six months.  Again, Pitts applied to about nine trucking companies and was told that he was unemployable at those companies due to his driving record.  Pitts then returned to GMT for a few months until GMT's truck once again broke down.  For a short period, Pitts drove for another truck owner that used Parkwood as a broker.  After that truck also broke down, Pitts began driving for Parkwood.  Pitts' employment application with Parkwood is dated February 1, 2018.

In Pitts' employment application, Pitts listed KAK as his employer from 2013 to 2017.  Pitts did not list any of his other previous employers in his employment history.

Pitts drew a slash across the sections asking for his accident record and traffic convictions from the past three years and did not otherwise fill out these sections of his application.

Lanair Taylor ("Taylor"), the owner and operator of Parkwood, was in charge of Parkwood's hiring.  Parkwood contracted with Foley Carrier Services, LLC ("Foley") to perform background checks and investigate potential hires.  Foley investigated Pitts and provided Parkwood an Illinois Motor Vehicle Report that did not reveal any license restrictions or infractions on Pitts' driving record between March 2015 and March 2018. (Doc. 80-3 at 19).

Taylor was also responsible for training Parkwood's truck drivers.  Taylor trained Pitts by reading Parkwood's policies aloud to him.  Taylor also conducted a road test when Pitts first started driving.  As Taylor did not know how to drive a truck, Taylor assessed basic functions like whether Pitts knew how to shift gears, read gauges, signal, and brake.

Pitts received several citations while driving for Parkwood.  On December 19, 2020 Pitts received a citation from the Ohio State Highway Patrol because his truck had three inoperable lights, a broken cab door, and a broken hinge on the trailer door.  On January 7, 2020, Pitts received a citation from the Ohio State Highway Patrol because his truck had a flat tire that was off the rim.  On January 13, 2020, Pitts received a citation from the Ohio State Highway Patrol for failing to log his total mileage entries for January 9th and 10th. On January 27, 2020, Pitts received a citation from the Indiana State Police for operating his truck without completing or displaying proof of an annual inspection.

On April 22, 2020, Pitts was driving a Georgia-bound load on U.S. Highway 280 in Phenix City, Alabama.  When Pitts reached the top of a hill, he saw that the upcoming

traffic light was red.  Lawson was properly stopped in his vehicle at the upcoming traffic light.  Pitts tried to stop his vehicle, but his brakes did not bring his truck to a complete stop.  As a result, Pitts collided with Lawson's vehicle.  This litigation ensued.

## IV.   DISCUSSION

Parkwood has moved for summary judgment on the negligent/wanton hiring, training, supervision, and retention claims and the negligent/wanton entrustment claims. Lawson does not oppose the entry of summary judgment on his wanton hiring, training, supervision, retention, or entrustment claims or his negligent supervision and retention claims.   Lawson opposes summary judgment on his negligent hiring, training, and entrustment claims but admits the outcome "may be a close call." (Doc. 88 at 82).   The Court will first address Lawson's negligent hiring claim, followed by his negligent entrustment and negligent training claims.

### A.  Negligent Hiring[2]

"To establish negligent hiring 'a plaintiff must demonstrate that the employer knew, or in the exercise of ordinary care should have known, that its employee was incompetent' when he was hired." *Claussen v. PowerSecure, Inc.*, 2019 WL 4941109, at *5 (M.D. Ala. Oct. 7, 2019).  "[T]he incompetence of a driver is measured by the driver's demonstrated ability (or inability) to properly drive a vehicle." *Halford v. Alamo Rent-A-Car, LLC*, 921 So. 2d 409, 413 (Ala. 2005).  "Alabama courts have been especially reluctant to allow a

---

[2] Because this matter is before the Court on diversity jurisdiction, the state law causes of action are examined under Alabama law. *Poplin v. Bestway Express*, 286 F. Supp. 2d 1316, 1318 (M.D. Ala. 2003) (applying Alabama law to negligent hiring, training, and entrustment claims on diversity jurisdiction).

negligent hiring claim when the driver's accidents or speeding tickets were in the distant past." *Claussen*, 2019 WL 4941109, at *5.

Parkwood has moved for summary judgment on Lawson's negligent hiring claim, arguing that Lawson cannot establish that Pitts was incompetent or that Parkwood should have known about Pitts' incompetence when he was hired.  Lawson opposes summary judgment, arguing that Pitts was generally incompetent by his own admission.  Lawson provides no evidence in support of this contention.  When Parkwood hired Pitts, Pitts had three citations from Swift.  Pitts also had citations on his license from his initial employment with GMT.  The citations Pitts received while working for Parkwood do not play into the incompetency analysis for Lawson's negligent hiring claim because Pitts accrued them after he was hired.

Here, Pitts' citations from Swift were from 2010, his citations from GMT were from 2011 or 2012, and his application with Parkwood was dated February 1, 2018.  Such temporally distant violations do not establish Pitts' incompetency under Alabama law.  In *Askew v. R & L Transfer, Inc.*, 676 F. Supp. 2d 1298 (M.D. Ala. 2009), a driver committed two moving violations and was involved in four minor accidents over a nine-year period. *Id.* at 1303.  This Court described those incidents as "blemishes on an otherwise clean professional driving record" and found that the driver was competent to drive. *Id.*  This Court reasoned that Alabama law "does not require that [the driver] have a record completely free of mistake." *Id.*  Over a similar period of time, Pitts had fewer citations and fewer accidents than the driver in *Askew*.  Pitts had three citations, compared to the *Askew* driver's six citations, in the eight years before Pitts was hired by Parkwood.  Thus,

Pitts' record was even less indicative of an inability to safely operate a vehicle than the record of the driver who was found competent in *Askew*.

Further, Pitts' citations are temporally remote from his hire date, weighing against his incompetence under Alabama law. *See Mason v. New*, 475 So. 2d 854, 856 (Ala. 1985) (suggesting incident's remoteness in time reduces its weight in competence analysis). Although Pitts received additional citations while driving for GMT, Lawson cannot identify the quantity, severity, or bases of those citations. This Court declines to engage in speculation as to what these additional citations may entail. Finally, the record does not establish that Pitts was involved in any wrecks or accidents in the three years before he was hired, evidencing that Pitts was a competent driver. *See Claussen*, 2019 WL 4941109, at *5. Ultimately, Lawson has not established that Pitts was incompetent under Alabama law on the date Parkwood hired him.

Additionally, Lawson cannot establish that Parkwood knew or should have known about Pitts' prior citations. Pitts did not report any information on his job application that would indicate that he had previous citations. Lawson argues that Parkwood should have learned of Pitts' incompetency by conducting a more rigorous investigation. However, Parkwood hired an investigator to research Pitts' driving history, and that investigator did not find any citations on Pitts' record within the previous three years. Further, Pitts hindered Parkwood's ability to investigate because he submitted an incomplete version of his employment history in his application. For example, because Pitts did not list Swift as a previous employer, Parkwood had no reason to investigate Pitts' driving history with Swift. Based on the information Pitts provided, Parkwood conducted a reasonable

investigation under the circumstances. *See Wright v. McKenzie*, 647 F. Supp. 2d 1293, 1298 (M.D. Ala. 2009) (verifying employee's commercial driver's license and insurance information was reasonable investigation when no evidence suggested further "investigation would have uncovered proof of [driver's] incompetence").

Parkwood's investigation is not made unreasonable by the fact that other trucking companies declined to hire Pitts based on his driving record. Those trucking companies conducted their investigations closer in time to when Pitts received his citations, making those citations easier to detect. Second, there is no evidence that Pitts misrepresented his employment history to those trucking companies as he did with Parkwood. As Lawson has not established that Pitts was incompetent when he was hired or that Parkwood knew or should have known that Pitts was incompetent, Parkwood's motion for summary judgment on Lawson's negligent hiring claim is due to be granted.

### B.  Negligent Entrustment and Negligent Training

"The elements of a cause of action for negligent entrustment are: '(1) an entrustment; (2) to an incompetent; (3) with knowledge that he [or she] is incompetent; (4) proximate cause; and (5) damages.'" *Pryor v. Brown & Root USA, Inc.*, 674 So. 2d 45, 51 (Ala. 1995) (quoting *New*, 475 So. 2d at 856). To establish a negligent training claim against an employer, "a plaintiff must demonstrate that the employer knew, or in the exercise of ordinary care should have known, that its employee was incompetent." *Mason v. McGuffey*, 2022 WL 3640301, at *4 (M.D. Ala. Aug. 23, 2022). "[T]he incompetence of a driver is measured by the driver's demonstrated ability (or inability) to properly drive a vehicle." *Halford*, 921 So. 2d at 413. Infractions that are "administrative in nature" do

10

not bear on a driver's "actual ability or inability to properly handle an automobile on the road." *Id.*

Parkwood has also moved for summary judgment on these two claims, arguing that Pitts was not incompetent on the date of the accident. As discussed, Lawson has not established that Pitts was incompetent when he was hired. Although Pitts received additional citations from law enforcement before the accident occurred, these additional citations also do not establish Pitts' incompetence to drive a vehicle.

Several of the citations Pitts received while driving for Parkwood do not evidence incompetency under Alabama law. Pitts received citations for failing to record his mileage and for operating his truck without completing or displaying proof of an annual inspection. In *Halford*, the Alabama Supreme Court held that a suspended license did not establish a driver's incompetence when the driver's license was suspended because the driver failed to appear in traffic court regarding her failure to display a tag. *Id.* at 414. The court reasoned that the citation was administrative in nature and did not impact that driver's ability to safely handle an automobile. *Id.* Pitts' deficient logging habits and failure to comply with inspection obligations do not hinder his ability to safely operate a vehicle and are thus equally administrative in nature.

Pitts' other citations from his time at Parkwood—driving with a flat tire, driving with faulty doors, and driving with inoperable headlamps—are akin to the infractions this Court has previously described as "minor violations." *McGuffey*, 2022 WL 3640301, at *4 (describing citations for inoperative headlamp and inoperative brakes as minor). Thus, while Lawson establishes that Pitts had three minor infractions within one year of the

11

accident, Pitts did not have any wrecks or accidents on his record in over five years before the accident.  Pitts had also successfully completed a driving test and had never had his trucking certification revoked.  Ultimately, the evidence Lawson puts forth is insufficient to establish Pitts' incompetence under Alabama law.  Because Lawson cannot establish that Pitts was incompetent at the time of the accident, Lawson cannot establish a claim for negligent entrustment or negligent training, and Parkwood's motion for summary judgment is due to be granted.

## V.   CONCLUSION

For the reasons discussed above, it is hereby

ORDERED that the Defendant's motion for partial summary judgment (doc. 79) is GRANTED.

Done this 14th day of February, 2023.

/s/ Emily C. Marks
EMILY C. MARKS
CHIEF UNITED STATES DISTRICT JUDGE